Albert J. MAMLIN

v.

**FAIRFIELD–NOBLE CORPORATION.**

No. CA 3–75–0521–C.

United States District Court,
N. D. Texas,
Dallas Division.

June 29, 1977.

Sam Passman, Gerald R. Coplin, and Stephen S. Maris, Passman, Jones, Andrews, Coplin, Holley & Co., Dallas, Tex., for plaintiff.

Neal E. Young, Ira E. Tobolowsky, and Robert C. Cheek, Tobolowsky & Schlinger, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiff originally filed this action in State court on February 26, 1975, seeking an accounting as well as damages in the amount of $11,770.74 for breach of a contract by which he was designated as a com-

mission-basis sales representative for the Defendant corporation. Plaintiff also sought attorneys' fees in the amount of $5,000. As diversity existed, the case was removed to this court where Defendant answered and filed counterclaims against Plaintiff seeking recovery (1) of $948.44 in advances paid in excess of commissions earned and (2) of an additional $740.32 for samples provided by Defendant. The Court is of the opinion that Plaintiff is entitled to recover against Defendant the sum of $10,735.14, costs of this action to be taxed against Defendant.

■ As a preliminary matter, we are faced with the fact that Plaintiff is seeking both an accounting and actual damages of $11,770.74. The rule in Texas is that "The petition for an accounting should contain an appropriate prayer and should not conclude with a prayer for specific relief." 1 Texas Jurisprudence 2d, Accounts & Accounting, § 107. Here, Plaintiff was apparently pleading in the alternative and at trial conducted his case as if he were seeking damages of $11,770.74 as an exclusive remedy. Further, there was no allegation that Defendant failed to account accurately to Plaintiff other than with respect to the C. R. Anthony account discussed below. As for this account, it was Plaintiff's position at trial that the $11,770.74 sought is the true and accurate amount of commissions owed for sales to that firm. We must conclude, therefore, that by pleading and seeking to prove actual damages of $11,770.74, Plaintiff has abandoned his petition for an accounting.

The contract at issue is in the form of a letter dated March 28, 1973 from the Vice President-Sales for Fairfield-Noble to Plaintiff. In summary, the letter confirms that Plaintiff would be representing the Defendant corporation with respect to sales of three lines of women's ready-to-wear apparel. The letter sets out Plaintiff's territory as the States of Oklahoma, New Mexico, and a particularly described portion of West Texas. Oklahoma City, Oklahoma was specifically mentioned in the letter as one of the major cities in Plaintiff's territo-

ry. The letter-contract further provides that:

"You will receive commission at the rate of six per cent (6%) for all net sales to accounts in your territory, as well as a 90-day draw of four hundred ($400.00) dollars per week."

■ The difficulty between Plaintiff and Defendant seems to have arisen over direct sales by Fairfield-Noble to the C. R. Anthony Co. (hereafter, "Anthony's") which had its headquarters in Oklahoma City, Oklahoma. It was apparently Defendant's position that Anthony's was a "house account" and that Plaintiff was not entitled to commissions on direct sales to Anthony's. Whatever the basis was for Defendant's failure to credit Plaintiff with sales to Anthony's, however, the contract is unambiguous in specifying that Plaintiff would be entitled to commission of 6% on "all net sales to accounts in your territory." Failure of Defendant to pay Plaintiff commissions on all sales to Anthony's during the period of Plaintiff's employment was, therefore, a breach of the contract.

From the date of the contract to early July of 1973, Plaintiff represented Defendant in his prescribed territory despite growing tensions that developed as a result of Plaintiff's efforts to obtain commissions on Defendant's direct sales to Anthony's. Finally, after advising representatives of Defendant that he was resigning, Plaintiff was informed by letter dated July 13, 1973 from Defendant's Vice President-Sales that Plaintiff no longer represented Defendant and that

"Commissions due you for the Fall season's bookings to date are being credited to your account."

It was Plaintiff's testimony at trial that he later requested information from Anthony's as to purchases by that firm of the three Fairfield-Noble clothing lines he sold for the company. Defendant stipulated to admission of a letter dated December 7, 1974 addressed to Plaintiff from Diane Hutchinson of Anthony's to the effect that Anthony's "remittances to the F. N. Factoring Division from April 1973 through Au-

gust 1973 . . . [were] $196,179.01." It was Plaintiff's further testimony that the "Fall season" referred to in the Fairfield-Noble letter of July 13, 1973, by custom and usage within the industry, means through August; that by custom within the industry, Plaintiff was entitled to a commission on all sales to Anthony's even though some of the purchases were undoubtedly sent to Anthony's stores outside Plaintiff's territory; and that it is the custom within the industry for sales representatives to sell samples provided by the company at the end of the season and retain the proceeds as part of their compensation.

Defendant produced no witnesses at trial but rather rested its case after cross-examination of Plaintiff who was the only witness. At final argument, therefore, Counsel for Defendant was in the unenviable position of trying to establish that Plaintiff had not proved all the elements of his case by a preponderance of the evidence. Defendant argues that Plaintiff is not entitled: (1) to commissions on sales to Anthony's that were sent to Anthony's outlets in other states; (2) to commissions on all sales through August of 1973; or (3) to proceeds from the sales of samples provided by Defendant. In each instance, however, it is Plaintiff's uncontroverted testimony that, by custom and usage within the industry, he is entitled to such monies. Further, Defendant argues that the Anthony's letter to Plaintiff does not state that the $196,-179.01 in remittances was for purchases of the three Fairfield-Noble clothing lines handled by Plaintiff. Again, however, it was Plaintiff's uncontroverted testimony that the Anthony's letter was in reply to his request for total sales of his three lines during the period in question. Finally, Defendant argues that the Anthony's letter states that the $196,179.01 in remittances was paid to the "F. N. Factoring Division" and that Plaintiff failed to prove that F. N. Factoring Division is connected with Fairfield-Noble Corporation. On this point, however, Plaintiff testified that the letter was in reply to his request for sales figures with respect to the three lines he sold. In addition, a review of the trial exhibits re-veals that Plaintiff's Exhibit # 3 is a collection of approximately 65 copies of invoices for merchandise sold by Plaintiff while employed by Fairfield-Noble Corporation. Each of these invoices contains the following instruction in the lower right-hand corner:

"All Checks To Be Made Payable To F. N. Factoring Division."

■ In short, we are of opinion that Plaintiff has made out his case by a preponderance of the evidence. It is true, as Counsel for Defendant maintains, that Plaintiff's evidence of direct sales to Anthony's is not the best evidence of such sales, but it is the best evidence that was available to Plaintiff. Certainly, it was sufficient to make out a prima facie case that such sales amounted to $196,197.01 thereby shifting to Defendant the burden of producing evidence to the contrary. This is particularly true where, as here, the Defendant is in control of the books of account and other business records which would constitute the best evidence of such sales. The only exhibit offered by Defendant, however, was an unexplained computer printout of sales by Plaintiff which is not represented to be a record of all sales to Anthony's during the period in question. Rather, it appears to be a record of those sales which Defendant had originally credited to Plaintiff's sales account.

■ As for the question of attorneys' fees, the contract at issue did not provide for award of attorneys' fees. In addition, this type of action does not appear to come within that class of actions in which attorneys' fees may be awarded under authority of Art. 2226, V.A.T.S.

It is the conclusion of this court, therefore, that judgment must be entered for Plaintiff against Defendant for $10,735.14, such sum representing a commission of 6% on sales of $196,179.01 ($11,770.74) less the $1,035.60 which the parties stipulated was paid to Plaintiff as advance draws in excess of his other sales. Costs of this action are to be taxed against Defendant. Counsel for Plaintiff is requested to prepare and

submit appropriate form of judgment, approved as to form by Counsel for Defendant.