851 A.2d 576

**Robert ARROYO**

v.

**BOARD OF EDUCATION OF HOWARD COUNTY.**

**No. 114, Sept. Term, 2003.**

Court of Appeals of Maryland.

June 10, 2004.

648

Francis A. Pommett, III (Law Offices of Nathanson & Pommett, P.C., Baltimore), on brief, for Appellant.

Michael S. Molinaro (Reese & Carney, LLP, Columbia), on brief, for Appellee.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, Judge.

This case concerns a decision by the Board of Education of Howard County ("County Board"), respondent, to terminate the employment of Robert Arroyo, petitioner, a guidance counselor employed by the Howard County Public School System ("HCPSS"),[1] and whether the later affirmance of that decision by the Maryland State Board of Education ("State Board") constituted an exhaustion of petitioner's administrative remedies.

Prior to the instant case, petitioner had previously contested his termination through the administrative procedures available to him under Md.Code (1978, 2001 Repl.Vol., 2003 Supp.), § 6–202 of the Education Article. After a May 28, 1998 decision by the State Board that affirmed the County Board's decision to terminate petitioner's employment, petitioner sought judicial review of the State Board's decision under Md.Code (1984, 1999 Repl.Vol.), § 10–222 of the State Government Article. Upon judicial review, the State Board's decision was affirmed by the Circuit Court for Howard County on April 8, 1999, and by the Court of Special Appeals on June 14, 2000.[2] On February 8, 2002, petitioner then filed this separate civil complaint sounding in tort against the County Board and Howard County, Maryland, alleging wrongful termination from his employment with HCPSS.[3]

In the present case, the County Board filed an answer to petitioner's February 8, 2002 complaint and, on May 29, 2002, moved for summary judgment, arguing that petitioner's claim was barred by the statute of limitations. On April 15, 2003, the Honorable Lenore Gelfman of the Circuit Court for How-

---

**1.** The parties, in their briefs, refer to the County Board and the HCPSS as if they are separate legal entities. We shall, accordingly, also sometimes use that terminology.

**2.** We denied petitioner's Petition for Writ of Certiorari on this original claim on October 13, 2000. *Arroyo v. State Board of Ed.*, 361 Md. 231, 760 A.2d 1106 (2000).

**3.** Howard County was dismissed from the lawsuit on May 10, 2002.

ard County held a hearing on the motion. On May 5, 2003, Judge Gelfman issued a memorandum opinion and order granting the County Board's motion for summary judgment, holding that petitioner's lawsuit was barred by the statute of limitations. Petitioner then appealed this decision to the Court of Special Appeals. On February 2, 2004, prior to consideration by the Court of Special Appeals, we issued a Writ of Certiorari. *Arroyo v. Board of Education,* 379 Md. 224, 841 A.2d 339 (2004). Petitioner presents one question for our review:

> "Was [the Circuit Court] legally correct in determining that [petitioner's] administrative remedies were exhausted following the decision of the Maryland State Board of Education rather than after judicial review as provided in Sections 10–222 and 10–223 of the State Government Article, so as to start the statute of limitations running on his tort claim for wrongful discharge on the earlier date?" [Alterations added.]

We hold that the State Board's May 28, 1998 decision affirming petitioner's termination from his employment with HCPSS was the final decision of the administrative body and constituted an exhaustion of petitioner's administrative remedies and, as such, he was free to have his separate action in tort alleging wrongful termination adjudicated at least by that time, and perhaps could, as we note *infra,* have filed it even sooner subject to the separate action being stayed during the administrative proceedings.[4] Therefore, the three-year statute of limitations on this claim, as provided under § 5–101 of the Courts and Judicial Proceedings Article, began to run *no later* than May 28, 1998.[5] Petitioner's action of waiting to file

---

4. In this case we do not have to determine, and do not, whether a litigant must file his or her independent judicial action during the course of the administrative proceeding in order to toll the running of limitations.

5. We do not need to resolve whether the limitations period was actually running during the period when his administrative action was proceeding. Under our cases, it appears that the primary jurisdiction of an agency such as the Board does not actually prohibit the filing of an

a separate action in tort until February 8, 2002, more than three years after the State Board's final decision, was thus barred by the statute of limitations.

## I. Facts

Petitioner was a tenured guidance counselor at Oakland Mills High School ("Oakland Mills") in Columbia, Maryland, and had been employed by HCPSS since 1985. On January 31, 1997, petitioner was terminated from his employment by the County Board on the grounds of "willful neglect of duty" and "insubordination."

The incident that set in motion the events leading to petitioner's termination occurred on May 11, 1995, when petitioner had a physical altercation with a teacher at Oakland Mills. As a result of the injuries that he suffered at the hands of this teacher, petitioner had to be taken to a hospital emergency room for treatment. After being released from the hospital's care, petitioner received a disability certificate from his treating physician for the period of May 12–30, 1995. Petitioner did not work during this period and he did not return to work at Oakland Mills after May 30th.

During the summer of 1995, petitioner was transferred to Mt. Hebron High School ("Mt.Hebron") so as to alleviate any concerns he might have about working in the same building with the other teacher involved in the physical altercation. Petitioner, allegedly still traumatized by the physical altercation that previous May, did not report to work at Mt. Hebron in August 1995 and remained absent from work even after an independent medical examination was conducted at the behest of HCPSS by Dr. Steven W. Siebert, M.D., a psychiatrist. Dr. Siebert declared, in pertinent part, that "[t]here is no medical basis, from a psychiatric perspective, to support [peti-

---

independent judicial action, only its adjudication prior to the exhaustion of the administrative remedy. See cases *infra*. In the present case it is not necessary to answer that question because more than the statutory period of limitations passed subsequent to the final administrative determination.

tioner] remaining out of work provided [petitioner] is working in another location."

On October 23, 1995, Dr. Michael E. Hickey, the superintendent of HCPSS, concerned with petitioner's failure to return to work, and also aware of Dr. Seibert's report, informed petitioner that if he did not return to work by October 30th, the superintendent would recommend to the County Board that petitioner be terminated from his position. Although petitioner reported to work on October 30, 1995, after that brief one-day return he proceeded to be absent from work for the remainder to the 1995–96 school year.[6]

In a letter dated March 22, 1996, Superintendent Hickey informed petitioner that if he did not report to Mt. Hebron by April 1, 1996, or obtain an approved leave of absence, he would recommend to the County Board that petitioner be terminated for neglecting his professional duties. After petitioner failed to report to work on April 1, 1996, or, in the alternative, obtain an approved leave of absence, Superintendent Hickey did exactly as he had indicated he would do and recommended that petitioner be terminated.

Following an evidentiary hearing conducted by the County Board's hearing examiner,[7] who found that there was sufficient cause to recommend petitioner's termination, the County Board adopted the hearing examiner's recommendation and issued a decision, dated January 31, 1997, that stated that petitioner was to be terminated for "willful neglect of duty" and "insubordination."

Thereafter, petitioner appealed the County Board's decision to the State Board, which assigned the matter to an adminis-

---

6. Petitioner's continued absence was claimed to be due to several successive elective surgeries that petitioner underwent, surgeries that caused him to be unable to return to work. They included carpal tunnel surgery, foot surgery and ulnar nerve surgery.

7. Md.Code (1978, 2001 Repl. Vol), § 6–203(a) of the Education Article provides that "[f]or all proceedings before a county board under ... [§ ] 6–202 ... of this article, the county board may have the proceedings heard first by a hearing examiner."

trative law judge (ALJ). After conducting a *de novo* hearing, the ALJ recommended that petitioner be terminated. Based on the ALJ's findings and recommendation, the State Board issued an "opinion" on May 28, 1998 that concluded that petitioner was lawfully terminated for "willful neglect of duty."

Petitioner then sought judicial review of the State Board's decision in the Circuit Court for Howard County. After a hearing, the Circuit Court issued a memorandum opinion and order on April 8, 1999, affirming the administrative decision of the State Board. Petitioner then filed an appeal to the Court of Special Appeals. On June 14, 2000, in an unreported opinion, the intermediate appellate court affirmed the judgment of the Circuit Court.

On February 8, 2002, petitioner filed this separate civil complaint against both the County Board and Howard County, Maryland. In his complaint, petitioner alleges that he was wrongfully terminated from employment with the County Board because of his action of filing, on August 7, 1995, a workers' compensation claim.[8] The central dispute at issue, however, is, as presented to this Court, whether this complaint is barred by the general statute of limitations.

## II. Standard of Review

In reviewing the grant of a summary judgment motion, we are concerned with whether a dispute of material fact exists. *Todd v. MTA,* 373 Md. 149, 154–55, 816 A.2d 930, 933 (2003); *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144, 642 A.2d 219, 224 (1994); *Gross v. Sussex, Inc.,* 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993); *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737, 625 A.2d 1005,

---

**8.** Such an action by the County Board, if true, would be a violation of Md.Code (1991, 1999 Repl. Vol), § 9–1105 of the Labor and Employment Article, which states that "[a]n employer may not discharge a covered employee from employment solely because the covered employee files a claim for compensation under this title." *See also Ewing v. Koppers Co.,* 312 Md. 45, 537 A.2d 1173 (1988) (private cause of action existed when employee discharged solely because that employee filed a workers' compensation claim because such an action by the employer contravened the clear mandate of public policy).

1011 (1993); *Arnold Developer, Inc. v. Collins*, 318 Md. 259, 262, 567 A.2d 949, 951 (1990); *Bachmann v. Glazer & Glazer, Inc.*, 316 Md. 405, 408, 559 A.2d 365, 366 (1989); *King v. Bankerd*, 303 Md. 98, 110–11, 492 A.2d 608, 614 (1985) (citations omitted). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King*, 303 Md. at 111, 492 A.2d at 614 (citing *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 8, 327 A.2d 502, 509 (1974)). "[A] dispute as to facts relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment." *Salisbury Beauty Schs. v. State Bd. of Cosmetologists*, 268 Md. 32, 40, 300 A.2d 367, 374 (1973).

This Court also has stated that "the standard of review for a grant of summary judgment is whether the trial court was legally correct." *Goodwich v. Sinai Hosp. of Baltimore, Inc.*, 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996); *see also Murphy v. Merzbacher*, 346 Md. 525, 530–31, 697 A.2d 861, 864 (1997); *Hartford Ins. Co.*, 335 Md. at 144, 642 A.2d at 224; *Gross*, 332 Md. at 255, 630 A.2d at 1160; *Heat & Power Corp., Inc. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 592, 578 A.2d 1202, 1206 (1990) (citations omitted). The trial court, in accordance with Maryland Rule 2–501(e), shall grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that [the moving party] is entitled to judgment as a matter of law" (alteration added). The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact which is sufficiently material to be tried. *See Goodwich*, 343 Md. at 205–06, 680 A.2d at 1077; *Coffey v. Derby Steel Co.*, 291 Md. 241, 247, 434 A.2d 564, 567–68 (1981); *Berkey v. Delia*, 287 Md. 302, 304, 413 A.2d 170, 171 (1980). Thus, once the moving party has provided the court with sufficient grounds for summary judgment, the non-moving party must produce sufficient evidence to the trial court that a genuine dispute as to a material fact exists. *See, e.g., Hoffman Chevrolet, Inc. v. Washington County Nat'l Sav. Bank*, 297 Md. 691, 712, 467

A.2d 758, 769 (1983). This requires "produc[ing] facts under oath, based on the personal knowledge of the affiant to defeat the motion. Bald, unsupported statements or conclusions of law are insufficient." *Id.* (alteration added). With these considerations in mind, we turn to the case *sub judice.*

## III. Discussion

Md.Code (1978, 2001 Repl.Vol., 2003 Supp.), § 6–202(a) of the Education Article, sets forth the reasons and procedures by which certain educational employees in this State, including those employed by HCPSS, can be suspended from their employment or dismissed.[9] It states, in pertinent part:

"(a) *Grounds and procedure for suspension or dismissal.*—(1) On the recommendation of the county superintendent, a county board may suspend or dismiss a teacher, principal, supervisor, assistant superintendent, or other professional assistant for:

(i) Immorality;

(ii) Misconduct in office, including knowingly failing to report suspected child abuse in violation of § 5–704 of the Family Law Article;

(iii) Insubordination;

(iv) Incompetency; or

(v) Willful neglect of duty.

---

**9.** In *Board of Education of Anne Arundel County v. Barbano,* 45 Md. App. 27, 29, 411 A.2d 124, 125 (1980), the Court of Special Appeals succinctly explained the process by which a teacher, or, for that matter, any educational employee named in § 6–202(a), can be dismissed:

"The procedure for the dismissal is set forth in Ed. Art., § 6–202. Where the teacher has tenure, the 'charges' are preferred by the county superintendent in the form of a recommendation to the county board that the teacher be dismissed for cause. Upon the proper notice, the board must hold a hearing. The practice has evolved that requires the superintendent to substantiate the cause asserted to support his recommendation. Although it is the board that makes the decision whether or not to terminate, because the teacher's contract is with it, in reality the board acts in the manner of an impartial tribunal judging the charges made by one of its employees (the superintendent) against another of its employees (the teacher) and the latter's defense to those charges."

(2) Before removing an individual, the county board shall send the individual a copy of the charges against him and give him an opportunity within 10 days to request a hearing.

(3) If the individual requests a hearing within the 10–day period:

(i) The county board promptly shall hold a hearing, but a hearing may not be set within 10 days after the county board sends the individual a notice of the hearing; and

(ii) The individual shall have an opportunity to be heard before the county board, in person or by counsel, and to bring witnesses to the hearing.

(4) The individual may appeal from the decision of the county board to the State Board."

As is made clear in the plain language of § 6–202(a) of the Education Article, individuals unsatisfied with the outcome of the decision of a county board "may appeal ... to the State Board." On appeal, the authority of the State Board allows for it to "explain the true intent and meaning of the provisions of ... [the Education Article] that are within its jurisdiction," and the State Board "shall decide all controversies and disputes under these provisions." Section 2–205(e) of the Education Article. It is from the decision by the State Board, which is the "final decision" [10] in the administrative procedure

---

**10.** *See* Md.Code (1978, 2001 Repl. Vol), § 2–205(e)(3) of the Education Article, which states that "[t]he decision of the [State] Board is final." *See also* Md.Code (1984, 1999 Repl.Vol., 2003 Supp.), § 10–221 of the State Government Article, entitled "Final decisions and orders," which states, in pertinent part:

"(a) *Form.*—A final decision or order in a contested case that is adverse to a party shall be in writing or stated on the record. (b) *Contents.*—(1) A final decision or order in a contested case, including a remand of a proposed decision, shall contain separate statements of:

(i) the findings of fact;

(ii) the conclusions of law; and

(iii) the order.

(2) A written statement of appeal rights shall be included with the decision."

The ALJ's "Findings of Fact and Conclusions of Law," which was adopted by the State Board in its affirmance of the decision by the

available in § 6–202(a) of the Education Article, that a party unsatisfied with the outcome can seek judicial review under the Administrative Procedure Act,[11] particularly § 10–222 of the State Government Article. The reviewing court is generally the "circuit court for the county where any party resides or has a principal place of business." Section 10–222(c) of the State Government Article. The circuit court's decision-making authority on judicial review of administrative agency decisions is stated in § 10–222(h) of the State Government Article:

"(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the *final*[12] decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious." [Emphasis added.] [Footnote added.]

Under § 10–223(b) of the State Government Article, a "party who is aggrieved by a final judgment of a circuit court under this subtitle *may* appeal to the Court of Special Appeals

---

County Board, contains all the separate statements required by § 10–221 of the State Government Article.

**11.** The "Administrative Procedure Act" can be found at Md.Code (1984, 1999 Repl.Vol., 2003 Supp.), §§ 10–101 et seq. of the State Government Article.

**12.** Section 10–222(h) thus, contemplates that the decision to be judicially reviewed is a "final" administrative decision.

in the manner that law provides for appeal of civil cases" (emphasis added).

The issue raised by petitioner requires us to address the doctrine of primary jurisdiction in respect to administrative agency/court issues and to further examine at what point during this potential chain of administrative decisions, judicial reviews and appeals can there be said to exist an administrative finality, *i.e.,* an "exhaustion" of administrative remedies. Once we have determined when this exhaustion occurred we can then discern when, at the latest, the statute of limitations began to run on petitioner's related or collateral tort claim of wrongful discharge.

### A. Doctrine of Primary Jurisdiction and Exhaustion of Administrative Remedies

The United States Supreme Court in *United States v. Western Pacific Railroad Company,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), described the interplay between the doctrine of exhaustion and the doctrine of primary jurisdiction:

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and

whether the purposes it serves will be aided by its application in the particular litigation."

*Id.* at 63–64, 77 S.Ct. at 165 (citation omitted).

We have also discussed, in *Board of Education for Dorchester County v. Hubbard,* 305 Md. 774, 506 A.2d 625 (1986), the interplay of exhaustion principles and primary jurisdiction at some length, but, however, left open whether independent suits can be filed while administrative actions are in process where the agency has primary jurisdiction. In that opinion, we examined whether "the courts [should] defer to the State Board of Education under principles of primary jurisdiction, at least until the State Board authoritatively decides whether the classification of teacher's certificates and class size are subject to collective bargaining and arbitration." *Id.* at 785, 506 A.2d at 630 (alteration added). We explained that:

> " 'Primary jurisdiction "is a judicially created rule designed to coordinate the allocation of functions between courts and administrative bodies." The doctrine "comes into play when a court and agency have concurrent jurisdiction over the same matter ... and there is no statutory provision to coordinate the work of the court with that of the agency." ' "

> . . .

> "Where, however, the administrative remedy is deemed to be primary, this Court has generally held that it must be pursued and exhausted before a court exercises jurisdiction *to decide the controversy.*"

*Id.* at 786, 506 A.2d at 630–31 (quoting *Wash. Sub. San. Comm'n v. C.I. Mitchell & Best,* 303 Md. 544, 561–62, 495 A.2d 30, 39 (1985)) (citations omitted) (emphasis added).

In *Maryland–National Capital Park and Planning Commission v. Crawford,* 307 Md. 1, 511 A.2d 1079 (1986), we stated:

> "[W]here there is both an administrative remedy and an independent judicial remedy (*i.e.,* a specific judicial remedy exists other than judicial review of the administrative deci-

sion), where the administrative agency may have primary jurisdiction, and where the plaintiff invokes the judicial remedy prior to exhausting the administrative procedures, it has been held that the trial court may retain jurisdiction pending exhaustion of the administrative procedures. Once the administrative procedures are exhausted, the trial court may proceed; the plaintiff whose case is meritorious may be entitled to whatever relief is available under either the independent judicial action or the administrative/judicial review remedy."

*Id.* at 18, 511 A.2d at 1087–88 (citations omitted).

Thus, we perceive that there is no prohibition against filing an independent judicial action while primary administrative proceedings are under way, but, that there is a prohibition against deciding, *i.e.*, adjudicating, the issue in the independent judicial case until a final administrative *determination is made.* We specifically so noted in our holding in *Bell Atlantic of Maryland, Inc. v. Intercom Systems Corporation*, 366 Md. 1, 782 A.2d 791 (2001), a recent case discussing this issue, that "consumers, such as Intercom, do have the ability to pursue an independent judicial action in addition to the administrative remedies ... provided that they exhaust their administrative remedies prior to *adjudication* of an independent judicial action." *Id.* at 28, 782 A.2d at 807 (emphasis added). We most recently indicated that independent judicial actions could be filed so long as the independent judicial action was not "permitted to proceed to judgment" pending the final determination of the administrative agency. *Fosler v. Panoramic Design, Ltd.*, 376 Md. 118, 137, 829 A.2d 271, 282 (2003).

Petitioner claims that the statute of limitations on his tort claim for wrongful termination did not begin to run until he had exhausted his administrative remedies, which he claims included his appeal to the Court of Special Appeals from the judicial review of the administrative determination. Therefore, petitioner's contention is that the three-year statute of

limitations on his tort claim [13] did not begin to run before he had appealed the decision of the Circuit Court for Howard County to the intermediate appellate court and that court rendered its decision. In essence, petitioner is claiming that the administrative remedy provided to an educational employee contesting his or her termination is not exhausted upon a final decision by the State Board, but is only exhausted upon a final decision by a court pursuant to judicial review of final administrative agency action. This contention, for the reasons discussed herein, is wrong.

The exhaustion of administrative remedies doctrine requires that a party must exhaust statutorily prescribed administrative remedies, generally evidenced by a "final decision" by the administrative agency,[14] before the *resolution* of separate and *independent* judicial relief in the courts. *See, e.g., Bell Atlantic of Maryland, Inc. v. Intercom Systems Corp., supra* (holding that public utility consumers "must exhaust the statutory remedies provided [in the Public Utilities Article] before pursuing [to conclusion] available independent judicial relief in the form of common law actions") (alteration added). This Court explained the rationale for this doctrine in *Soley v. State Commission on Human Relations,* 277 Md. 521, 526, 356 A.2d 254, 257 (1976), where we stated:

> "[t]he rule requiring exhaustion of administrative or statutory remedies is supported by sound reasoning. The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it. The agency should be afforded the initial opportunity to exercise that discretion and to apply that expertise.

---

**13.** Md.Code (1973, 1998 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article, states that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

**14.** Md.Code (1984, 1999 Repl.Vol.), § 10–222(a) of the State Government Article allows for "a party who is aggrieved by the final decision in a contested case" to seek judicial review of the decision.

Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed."

The statutory frameworks from which these administrative remedies arise, however, do not always act as a complete bar to the pursuit of alternative judicial relief. In *Zappone v. Liberty Life Insurance Co.*, 349 Md. 45, 706 A.2d 1060 (1998), this Court clarified the varying nature of administrative remedies where an aggrieved party has an alternative judicial remedy under another statute or under common law or equitable principles. We explained that the relationship between an administrative remedy provided by statute and a possible alternative judicial remedy will fall into one of three categories, which we described as follows:

"*First*, the administrative remedy may be *exclusive*, thus precluding any resort to an alternative remedy. Under this scenario, there simply is no alternative cause of action for matters covered by the statutory administrative remedy.

"*Second*, the administrative remedy may be *primary but not exclusive*. In this situation, a claimant must invoke and exhaust the administrative remedy, *and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy.*

"*Third*, the administrative remedy and the alternative judicial remedy may be *fully concurrent*, with neither remedy being primary, and the plaintiff at his or her option may pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy."

*Zappone*, 349 Md. at 60–61, 706 A.2d at 1067–68 (citations omitted) (some emphasis added).

We further explained in *Zappone* that, "[w]hile sometimes the Legislature will set forth its intent as to whether an

administrative remedy is to be exclusive, or primary, or simply a fully concurrent option, most often statutes fail to specify the category in which an administrative remedy falls," and emphasized that, "where neither the statutory language nor the legislative history disclose an intent that the administrative remedy is to be exclusive, and where there is an alternative judicial remedy under another statute or under common law or equitable principles, there is no presumption that the administrative remedy was intended to be exclusive." *Id.* at 62–63, 706 A.2d at 1068–69. Instead, we stated that there exists a rebuttable presumption "that the administrative remedy is intended to be primary, and that a claimant cannot maintain the alternative judicial action *without first exhausting the administrative remedy.*" *Id.* at 63, 706 A.2d at 1069 (emphasis added).

Petitioner relies on both *Zappone* and the Court of Special Appeals' decision in *Intercom Systems Corp. v. Bell Atlantic of Maryland, Inc.*, 135 Md.App. 624, 763 A.2d 1196 (2000),[15] to support his contention that the administrative remedies provided for by § 6–202 of the Education Article were primary and non-exclusive. We agree. Nothing in the language of § 6–202 *explicitly* evidences an intent by the legislature for a county board of education, or the State Board, to have exclusive, primary, or concurrent jurisdiction to hear complaints brought by aggrieved educational employees alleging wrongful termination.

The very nature of the administrative framework of the Education Article *implicitly* indicates that it is meant to grant primary jurisdiction to a board of education in questions involving controversies and disputes that arise under the provisions of the Education Article, and, we have so held in the past. *See, e.g., Board of Education for Dorchester County v. Hubbard*, 305 Md. 774, 506 A.2d 625 (1986) (where there were issues involving grievances about teacher certifications

---

**15.** That case was subsequently appealed to this Court and the decision of the Court of Special Appeals affirmed. *See Bell Atlantic of Maryland, Inc. v. Intercom Systems Corp., supra.*

and class sizes and exhaustion of administrative remedies before the State Board was required before alternative judicial remedy could be adjudicated in a judicial forum). Under § 6–202 of the Education Article, such issues are to be addressed at the county level and the decision at this level can thereafter be appealed to the State Board. As this Court stated in *Board of Education of Prince George's County v. Waeldner*, 298 Md. 354, 360, 470 A.2d 332, 335 (1984):

"The totality of [the Education Article] provisions has been described as a visitatorial power of such comprehensive character as to invest the State Board 'with the last word on any matter concerning educational policy or the administration of the system of public education.' *Resetar v. State Board of Education*, 284 Md. 537, 556, 399 A.2d 225, *cert. denied*, 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979); *Wilson v. Board of Education*, 234 Md. 561, 565, 200 A.2d 67 (1964). The broad sweep of the State Board's visitatorial power has been consistently recognized and applied since the principle was first enunciated in 1879 in *Wiley v. School Comm'rs*, 51 Md. 401. *See, e.g., Shober v. Cochrane*, 53 Md. 544 (1880); *Underwood v. School Board*, 103 Md. 181, 63 A. 221 (1906); *Zantzinger v. Manning*, 123 Md. 169, 90 A. 839 (1914); *School Commissioners v. Morris*, 123 Md. 398, 91 A. 718 (1914); *School Com. of Car. Co. v. Breeding*, 126 Md. 83, 94 A. 328 (1915)." [Alteration added.]

In the case *sub judice*, petitioner was terminated from his employment after the County Board, and later the State Board, found his prolonged absence from work to evidence a "willful neglect of duty." Whether petitioner's actions constituted such grounds for removal was a decision *clearly within the jurisdiction of these entities*, which acted in their administrative capacities. As such, any alternate judicial remedy sought by petitioner normally would have to be adjudicated subsequent to the exhaustion of his administrative remedies under the Education Article. The real question actually presented in this case is when, for limitations purposes, are administrative decisions deemed final—when the final admin-

istrative decision is made or when a judicial review of that final administrative decision is completed?

## B. Final Administrative Decision

 We do not agree with petitioner's claim that his administrative remedies continued all the way through the resolution of his petition for judicial review in the circuit court and his subsequent appeal to the Court of Special Appeals, and his claim that he was "required" to follow through with petitioning for judicial review in the circuit court and appealing that court's decision to the intermediate appellate court before filing his instant tort action for wrongful termination. This Court has had the opportunity to examine the exhaustion of administrative remedies in the context of administrative decisions and appeals under the Education Article, as well as under other types of administrative actions, and we have never said, or meant to say, that an exhaustion of *administrative remedies* in cases such as the one *sub judice* does not occur until after a final decision has been made in the judicial forum as opposed to a final decision in the administrative forum.

In *Board of Education for Dorchester County v. Hubbard, supra,* this Court explained that a circuit court improperly *resolved* issues concerning the arbitrability of classification of teacher certificates and class sizes before the aggrieved teachers pursued and exhausted their administrative remedies before the State Board. Specifically, we considered "whether the decision should initially be made through the statutory administrative process *culminating in a decision by the State Board of Education.*" *Hubbard,* 305 Md. at 785, 506 A.2d at 630 (emphasis added). That we found that the administrative process available to the aggrieved teachers "culminated" with a decision by the State Board would appear to strongly, if not conclusively, indicate that such a decision is tantamount to an exhaustion of administrative remedies. Perhaps even more on point in *Hubbard,* we stated that "the teachers [may be given] an opportunity to *exhaust their administrative remedies and*

*obtain a final decision from the State Board of Education.*[16] If the decision of the State Board is adverse to the teachers, and if they seek judicial review, *the judicial review actions could then be consolidated with the instant cases." Id.* at 792–93, 506 A.2d at 634 (alteration added) (emphasis added) (footnote added) (citing *Offutt v. Montgomery County Board of Education,* 285 Md. 557, 404 A.2d 281 (1979)); *see also Fosler v. Panoramic Design, Ltd.,* 376 Md. 118, 138, 829 A.2d 271, 283 (2003) (where homeowners were required to exhaust administrative remedies before the Home Improvement Commission, because the Commission had primary jurisdiction, we held that the circuit court "should stay [an independent] declaratory judgment action pending a *final decision* by the Home Improvement Commission") (alteration added) (emphasis added); *Dorsey v. Bethel A.M.E. Church,* 375 Md. 59, 76, 825 A.2d 388, 398 (2003) (holding, in the context of a zoning decision, that "[t]here could be no exhaustion of administrative remedies until there was a *Board of Appeals' decision* finally approving or disapproving Bethel's development plan") (emphasis added).

In *McCullough v. Wittner,* 314 Md. 602, 606, 552 A.2d 881, 883 (1989) we held that an inmate who sought damages for personal injuries resulting from a correctional officer's alleged tortious conduct "must file a complaint with and *exhaust his [administrative] remedies before the [Inmate Grievance] Commission prior to bringing a common law tort action."* (alterations added) (emphasis added). But, we went on to acknowledge that although he was required to exhaust his

---

**16.** This Court explained, in *Maryland Commission on Human Relations v. Baltimore Gas & Electric Co.,* 296 Md. 46, 56, 459 A.2d 205, 211 (1983), that "ordinarily the action of an administrative agency, like the order of a court, is final if it determines or concludes the rights of the parties, or *if it denies the parties means of further prosecuting or defending their rights and interests in the subject matter in proceedings before the agency,* thus leaving nothing further for the agency to do" (emphasis added). In the case *sub judice,* § 6–202 of the Education Article provides for no further administrative appeal beyond that of the State Board, as the "decision of the Board is final." Section 2–205(e)(3) of the Education Article.

administrative remedy, "before receiving an *adjudication* on the merits of his tort action, we do not believe that a dismissal of the tort action was the preferable order. . . . [I]t is appropriate for the trial court to retain, for a reasonable period of time, jurisdiction over the independent judicial action pending invocation and exhaustion of the administrative procedures." *Id.* at 613, 552 A.2d at 886 (emphasis added); *see also Maryland–National Capital Park and Planning Comm'n v. Crawford,* 307 Md. 1, 18, 511 A.2d 1079, 1088 (1986) (where the administrative agency has primary jurisdiction, "[o]nce the administrative procedures are exhausted, the trial court may proceed; the plaintiff whose case is meritorious may be entitled to whatever relief is available under *either the independent judicial action or the administrative/judicial review remedy"*) (emphasis added).

In summary, in cases where the administrative remedy is primary, and there are alternative independent judicial remedies available, the alternate judicial remedy may not be resolved (although the action can be brought and stayed) prior to the exhaustion of the administrative remedy, *i.e.,* the final agency determination. It is from no later than this point that the limitation period begins to run.[17] While in primary jurisdiction cases, the alternate judicial action may, in some circumstances, be filed before the final administrative determination, under the circumstances of this case it was required to be filed no later than three years from that the point in time when the final administrative decision was made.

In accordance with this Court's opinion in *Hubbard,* it appears that May 28, 1998, the day the State Board issued its final[18] decision in regard to the propriety of petitioner's

---

17. Given that this court and other courts have recognized that independent judicial actions can be filed, even though required not to be resolved, prior to the exhaustion of administrative remedies, it may be that limitations runs throughout the period of the administrative proceeding (and there are jurisdictions that have so held). In this case, however, it is not necessary to resolve that issue.

18. There were no relevant issues in this case regarding motions before the Board that would have extended finality.

dismissal, was the date on which petitioner can be said to have finally exhausted his administrative remedies. Because petitioner claims that the Circuit Court erred in holding that the three-year statute of limitations began to run on this date, thereby barring his February 8, 2002 complaint, we shall examine whether the Circuit Court's conclusion was correct.

### C. Statutes of Limitation and the "Discovery Rule"

Ordinarily, under § 5–101 of the Courts and Judicial Proceedings Article, "[a] civil action at law shall be filed within three years from the date it accrues...." Historically, a cause of action was deemed to have "accrued" in a tort action, and the statute of limitations began to run, when the actual wrong occurred. *See Waldman v. Rohrbaugh,* 241 Md. 137, 139, 215 A.2d 825, 827 (1966); *Killen v. George Washington Cemetery, Inc.,* 231 Md. 337, 343, 190 A.2d 247, 250 (1963). Dissatisfied with the often unfairly harsh confines of such a rule, as it did not distinguish a plaintiff who was "blamelessly ignorant" of his potential claim and the plaintiff who had "slumbered on his rights," this Court first recognized what has become known as the "discovery rule" in the case of *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917) (allowing for discovery rule in medical malpractice claims). The discovery rule, as it pertains to statute of limitations issues, provides that a "cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." *Hecht v. Resolution Trust Corp.,* 333 Md. 324, 334, 635 A.2d 394, 399 (1994). The discovery rule itself was for many years limited to cases involving professional malpractice. *See, e.g., Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1 (1972) (accountant); *Steelworkers Holding v. Menefee,* 255 Md. 440, 258 A.2d 177 (1969) (architect); *Mattingly v. Hopkins,* 254 Md. 88, 253 A.2d 904 (1969) (civil engineer); *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A.2d 359 (1969) (attorney). In *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677, 680 (1981), however, this Court, "sensing no valid reason why [the discovery] rule's sweep should not be applied to prevent an injustice in other

types of cases," held that the discovery rule was "applicable generally in all [civil] actions."

██ The dispositive issue in determining when a statute of limitations begins to run under the discovery rule is ascertaining when the plaintiff was put on notice that he may have been injured. It is manifest to this Court, after viewing *Hahn* and its progeny, that the statute of limitations on petitioner's civil claim of wrongful termination began to run when he knew or reasonably should have known of the claimed wrong done to him, *i.e.*, his dismissal as an employee of the HCPSS. Petitioner was effectively terminated from his employment on January 31, 1997, when the County Board issued its decision that stated that petitioner was to be terminated from his position. This decision, however, was not the *final decision* allowing for petitioner's termination. As we stated earlier, because he contested his termination under § 6–202 of the Education Article, the final administrative decision regarding whether petitioner was to be terminated from his employment was left to the discretion of the State Board, which, in an "opinion" dated May 28, 1998, affirmed the decision of the County Board. It was *this decision,* and not that of the County Board, that conclusively terminated petitioner's employment with HCPSS as an administrative matter. Petitioner's employment with HCPSS, as far as the agency was concerned, was effectively over after this decision by the State Board, a decision which, as we stated earlier, exhausted his administrative remedies. It was this decision on May 28th that constituted the final administrative decision. While we have not directly addressed this issue in relevant context in our cases, it is clear that there was nothing left for the State Board to do, and it is thus from at least this point that the statute of limitations began to run. Some other jurisdictions have more directly addressed the issue. One has resolved the exact issue.

In *Krecek v. Board of Police Commissioners of La Grange Park,* 271 Ill.App.3d 418, 207 Ill.Dec. 227, 646 N.E.2d 1314 (1995), the Illinois appellate court stated:

"Next, plaintiff contends that her claims are not time-barred because the doctrine of exhaustion of remedies tolls the statute of limitations and the presentation of an administrative claim interrupts all applicable statutes of limitations. Plaintiff bases those claims on the assertion that she exhausted her available administrative remedies on June 5, 1992, when the trial court resolved her administrative review case.

"Plaintiff is mistaken. Her administrative remedies were exhausted before she filed her complaint for judicial review of the administrative action. Exhaustion of all administrative remedies occurs when a final administrative decision is rendered. In this case, all administrative remedies were exhausted on September 12, 1991, when the Board of Commissioners issued the final administrative decision of termination."

*Id.* at 426, 207 Ill.Dec. 227, 646 N.E.2d at 1320 (citations omitted).

In *Snoddy v. McKune,* 31 Kan.App.2d 579, 68 P.3d 168 (Kan.Ct.App.2003), the Kansas Court of Appeals stated:

"Here, ... it appears the Secretary's initial review is the final possible administrative remedy available. Therefore, Snoddy had exhausted all administrative remedies.... Accordingly, because [a Kansas statute] only allows for tolling of the statute of limitations when an individual is attempting to exhaust administrative remedies, Snoddy's argument must fail.... Snoddy's letter cannot be construed as an attempt to exhaust administrative remedies, because he had no further administrative remedies to exhaust. Therefore, the statute of limitations should not have been tolled, and his petition was untimely."

*Id.* at 583, 68 P.3d at 171 (alteration added) (citations omitted).

In *Cooper v. Minor,* 16 S.W.3d 578 (Mo.2000), the Supreme Court of Missouri stated, in relevant part:

"Thus, the remedy provided by the legislature for circumstances where an individual is unable to exhaust his or her administrative remedies prior to the running of the statute

of limitation is a stay of a timely filed lawsuit, not the tolling of a statute of limitations. Appellant makes no showing why he did not file suit after his grievance was initially denied on September 30, 1997, or that he attempted to timely file suit and seek a stay pending his second grievance appeal."

*Id.* at 582.

For the reasons we have stated the three-year statute of limitations on petitioner's wrongful termination claim began to run *no later* than May 28, 1998.

Petitioner, relying on the discovery rule, claims, however, that he "did not discover that he would not be reinstated through administrative remedy until after [the administrative remedy] had been exhausted," which, as we have said, he contends was not exhausted until at least after judicial review. This is not so. It was the *act* of the State Board, in its affirmance of the County Board's decision to terminate petitioner from his employment, that was the final decision of the administrative agency and signified an exhaustion of petitioner's administrative remedies. It was no later than this point that petitioner's injury "accrued." And it was no later than this point that he knew, or should have known of the "injury." [19] The subsequent judicial review of this final administra-

---

**19.** Because we hold that petitioner's injury "accrued" no later than May 28, 1998, the date of the State Board decision, any argument by petitioner that the statute of limitations on his wrongful termination claim did not begin to run until after judicial review of his administrative claim, or possibly after his appeal to the Court of Special Appeals, because he was not aware until that time that he was finally terminated, is, in effect, asking for "equitable tolling" of the statute of limitations. As we stated in *Hecht v. Resolution Trust Corporation, supra,* "[w]e have long maintained a rule of strict construction concerning the tolling of the statute of limitations. *Absent legislative creation of an exception to the statute of limitations, we will not allow any 'implied and equitable exception to be engrafted upon it.'*" *Hecht,* 333 Md. at 333, 635 A.2d at 399 (1994) (quoting *Booth Glass Co. v. Huntingfield Corp.,* 304 Md. 615, 623, 500 A.2d 641, 645 (1985)) (emphasis added). As the Maryland Legislature has not provided an exception applicable in this case, allowing for the tolling of the statute of limitations through the judicial review of administrative decisions, we do not find that there was a

tive decision under § 10–222 of the State Government Article is not considered a part of petitioner's administrative remedies. At the judicial review stage, petitioner was no longer in an administrative forum, *but was then in a judicial forum.* As we stated in *Zappone, supra,* where administrative remedies are primary but not exclusive, "a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy." *Id.* at 60, 706 A.2d at 1067–68. We did not state in *Zappone* that a claimant has to obtain a final decision from the circuit court on judicial review before the administrative decision it reviewed can be considered a final administrative determination and he can file a separate court action.

## IV. Conclusion

The final decision by the State Board was dated May 28, 1998. At this point, or even earlier, petitioner *was free to file a separate court action alleging wrongful termination.* Because petitioner waited until February 8, 2002 to file this separate court action, more than three years after the State Board decision, his claim is barred by the statute of limitations. The Circuit Court correctly granted the County Board's motion for summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

---

tolling of the statute of limitations for petitioner's separate wrongful termination claim through judicial review of the State Board decision.