772 A.2d 880

Arlene GOLUB and Steven G. Friedman,
Personal Representatives of the
Estate of Jerome Golub,

v.

Richard S. COHEN.

No. 1383, Sept. Term, 2000.

Court of Special Appeals of Maryland.

May 3, 2001.

510

Howard B. Silberberg, McLean, VA (Nathan H. Wasser, Cumberland, on the brief), for appellant.

Joseph P. Suntum (Miller & Canby, on the brief), Rockville, for appellee.

Argued before DAVIS, KENNEY and ADKINS, JJ.

ADKINS, Judge.

In its second journey to this Court, this case requires us to decide whether the trial court "put the cart before the horse" when it ruled that appellant could not obtain discovery relating to his counterclaim for an equitable accounting until after he proved that he was entitled to that accounting. The late Jerome Golub, appellant,[1] appeals both the grant of summary judgment in favor of Richard S. Cohen, appellee, on Cohen's complaint for specific performance of a settlement agreement, and the grant of Cohen's motion for judgment on Golub's counterclaim for an accounting. We find no error, and affirm both judgments.

## FACTS AND LEGAL PROCEEDINGS

The dispute between these commercial joint venturers first reached this Court via Golub's premature appeal from the grant of summary judgment on Cohen's complaint by the Circuit Court for Montgomery County. *See Golub v. Cohen,*

---

1. Mr. Golub died after filing this appeal. On March 12, 2001, this Court ordered the substitution of the personal representatives of his estate, Arlene Golub and Steven G. Friedman. References in this opinion to "appellant" mean these substituted parties.

No. 6029, Sept. Term 1998 (filed Sept. 30, 1999) (unpublished) ("*Golub I* "). We dismissed that appeal because the judgment did not resolve Golub's still pending counterclaim. Now that judgment has been entered on the counterclaim, the case is ripe for appeal.

We shall paraphrase and supplement the factual portion of our opinion in *Golub I.* In the 1980's, Golub and Cohen formed a joint venture to develop and sell their respective interests in two parcels of real estate located in a single city block on New York Avenue in the District of Columbia. Cohen and Golub, individually and through family partnerships, each owned separate portions of Square 372. They combined their parcels for the purpose of offering the entire Square 372 to the United States General Services Administration ("GSA"). There was never any written agreement memorializing the joint venture or creating a partnership.

In 1991, Cohen made offers to the GSA to develop or sell Square 372 as a new FBI field office. Cohen represented all partners in the joint venture, which included Golub, Golub's family, and Cohen. After the GSA rejected the offer, Cohen lodged a formal protest on behalf of the joint venture. Initially, Golub and Cohen both contributed to the substantial legal and other expenses necessary to pursue the protest.

By 1993, Golub had informed Cohen that he was experiencing severe financial problems as a result of the downturn in the real estate market. Golub told Cohen he would no longer be able to contribute to these expenses. Cohen agreed to advance Golub's share of expenses, which Cohen claimed eventually exceeded $1 million.

Ultimately, that protest was unsuccessful. In the summer of 1993, Cohen, again on behalf of the joint venture, offered Square 372 to the GSA once again, this time for use as the new Secret Service headquarters. Golub's financial problems continued. By the fall of 1993, Golub and his family had lost all of their interests in Square 372 to NationsBank.

In December 1993, the GSA chose a different property for the Secret Service. On December 15, 1993, Cohen filed a

second protest.[2] Although Cohen invited Golub to participate in the second protest, Golub declined. He took no part in it.

In June 1994, the second protest yielded favorable results. The General Accounting Office ("GAO") recommended that the GSA readvertise for suitable property and pay Cohen damages. Nevertheless, the GSA elected to exercise its statutory rights to disregard the GAO recommendation. Cohen and the GSA negotiated regarding the protest. On September 13, 1994, Cohen reached a $1,750,000 settlement with the GSA (the "GSA Settlement").

At about the same time, during the summer of 1994, Cohen and Golub renegotiated Golub's debt to Cohen. Through their lawyers, they agreed that Golub would (1) give Cohen a $300,000 interest-free promissory note, payable in ten years, (2) transfer half of his interest in an unrelated partnership, and (3) release Cohen from "any and all claims relating to Square 372." By letter dated September 23, 1994, Cohen memorialized this agreement. On September 28, 1994, Golub indicated his acceptance of the agreement by signing that he "agreed to" the terms stated in the letter. We shall refer to this executed agreement as the "Settlement Agreement."

At his deposition in this action, Golub testified that he understood that the release related to the Square 372 property, that it would release Cohen, and that it would bind him. He admitted that he was motivated by the need to defer his financial obligations to Cohen, because he "had problems ten times over" that debt. He testified that he "would sign anything at that time . . . as long as [he] could borrow time . . . to work things out. . . ." His testimony also reveals that he believed the deal accomplished that goal with minimal risk. "It's $300,000 that you're talking about here with a nonrecourse date for ten years. If I never paid him, I never paid him. It wasn't a personal note."

Golub also knew before he signed the Settlement Agreement that Cohen had settled with the GSA. Golub testified

---

**2.** The record before us does not reflect the factual or legal basis for either the first or second protest.

that by the time Cohen presented him with the letter agreement, he "knew [Cohen] had an award, ... [but he] didn't know how much it was." He admitted that he had asked Cohen about it, and that Cohen had responded, "it's public record, go find out yourself, quote, unquote."

Despite Cohen's repeated requests, Golub never signed the promissory note or release as provided in the Settlement Agreement. Shortly before the three year statute of limitations was to expire, Cohen filed suit demanding specific performance of the Settlement Agreement. In response, Golub filed a single count counterclaim seeking an accounting for the GSA Settlement proceeds.

Cohen moved for summary judgment on his complaint, pointing to the Settlement Agreement and Golub's deposition testimony as undisputed evidence of Golub's obligation. Golub did not dispute that he signed the Settlement Agreement, but instead opposed the motion on the grounds that he was entitled to have an accounting of the GSA Settlement proceeds, and to a judgment in the amount of any sum of money found to be due and owing to him as a result of the accounting. The trial court held that the written agreement was "clear, concise, direct, unequivocal and unqualified and unconditional." It granted summary judgment on Cohen's complaint, without mentioning Golub's counterclaim.

Golub noted an appeal. On September 30, 1999, this Court dismissed it *sua sponte*, because the outstanding counterclaim meant that there was no final judgment. That opinion included the following dictum:

Although this appeal is not properly before us, we call attention to Md.Code Ann., Corps & Ass'ns Article § 9-403—9-405, in response to appellant's questions concerning appellee's fiduciary duties. Section 9-403 provides that "[p]artners shall render on demand true and full informance of all things affecting the partnership to any partner ..." Each partner is entitled to an accounting of partnership affairs. *See* §§ 9-404—405. Thus, appellee should have provided appellant with the information he sought.

On remand, trial on the counterclaim was set for July 18, 2000. Golub interpreted our dictum as an approval of his challenge to summary judgment and his right to an accounting. He relied on it in moving to vacate the summary judgment and propounding extensive discovery demands. Golub requested information relating not only to the second GSA protest, but also to all of the venture's affairs. He sought to depose Cohen. When Cohen refused to provide all of the documents and answers he demanded, or to be deposed, Golub filed motions to compel discovery and motions for sanctions.

Cohen opposed the motions and the discovery, arguing that the entire purpose of Golub's counterclaim was to obtain a "compromise of the compromise" reached in the Settlement Agreement. "What they are asking the [c]ourt to do is order us to do an accounting . . . and incur all these expenses and burdens before they prove they are entitled to it. . . ."

At a July 6, 2000 motions hearing before a different judge, the trial court denied Golub's motion to vacate the summary judgment and Golub's discovery motions. Instead, the court ruled that "[t]he trial can take place on the counter-claim. If [Golub] prevail[s] on the liability issue, then [he] can have an accounting." The court interpreted the appellate dictum as simply recognizing "what the law is if [Golub] prevail[s] on the liability issue." It was not persuaded by Golub's objections that he needed discovery to prepare for trial on the counterclaim, noting that "the issue at trial is going to be whether or not [Golub] has any claims whatsoever given the fact that he signed a [Settlement Agreement] extinguishing all claims. . . . What is the effect of the [S]ettlement [A]greement. . . . [W]hat does it mean."

On July 18, 2000, counsel for both parties appeared for trial as scheduled, before a third judge. Golub was not present. His counsel renewed his argument that he needed to obtain discovery responses in order to try the counterclaim. He advised the court that he "cannot present . . . any evidence in support of our counterclaim without the information that we have previously asked for." He did not specify any particular

information that could be relevant to determining whether Golub waived his right to an accounting in the Settlement Agreement. Instead, he argued that "the proof, to the extent it is necessary, comes from the statute, and ... from the Court of Special Appeals opinion."

The trial court ordered judgment for Cohen. It questioned whether the discovery he had demanded

> goes to the heart of [whether] ... there was a partnership relationship[.] ... [I]f so, then you are obviously entitled to the discovery, but there has not been a determination as to the entitlement of that status. That is what could have been tried today. There is no testimony to be presented today.... [B]ased on the lack of evidence being presented on the counterclaim, I will grant [Cohen's] motion to enter judgment ... on [Golub's] counterclaim...."

Golub filed this timely appeal to challenge the judgments on both the complaint and the counterclaim.

### DISCUSSION

■ Golub's appeal challenges the trial court's grant of Cohen's motion for summary judgment, and the denial of his motion to compel discovery, which in turn, led to the grant of Cohen's motion for judgment on the counterclaim. Because these rulings were premised on purely legal issues, we apply the same standard of review. In an action tried without a jury, when the issue to which appellant excepts, and on which the court ruled, is a purely legal issue, there being no dispute of fact, the appellate court's review is expansive. *See In re Michael G.*, 107 Md.App. 257, 265, 667 A.2d 956 (1995). We must determine whether the trial court was "legally correct." *See Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 592, 578 A.2d 1202 (1990).

### I.

### Summary Judgment On Cohen's Claim
### For Specific Performance

■ Golub argues that the trial court erroneously granted summary judgment on Cohen's claim for specific enforcement

of the Settlement Agreement. He contends that, regardless of the terms of the Settlement Agreement, and even though he no longer owned an interest in Square 372 and did not participate in the second protest, Cohen owed him a fiduciary duty to make full disclosure of all known information relating to the GSA Settlement, because it was a "partnership affair" that resulted in "partnership property." *See* Md.Code (1975, 1999 Repl.Vol.), §§ 9–404, 9–405 of the Corporations and Associations Article.

We shall not directly address all of the specific fiduciary and partnership issues Golub raises in his appeal, because we agree with the trial court that by executing the Settlement Agreement with knowledge of the GSA Settlement, Golub clearly and unequivocally waived any and all rights he may have had to obtain such information as either a partner or joint venturer. Golub admitted that he voluntarily signed the Settlement Agreement on September 28, 1994. He admitted that by that time, he knew Cohen had settled the GSA Protest and that Cohen did not intend to give him any information about the GSA Settlement.

These admissions doom Golub's appeal, just as they doomed his defense to the complaint. "[I]f there's no fraud, duress, or mutual mistake, one who has the capacity to understand a written document who reads and signs it, ... is bound by his signature as to all of its terms." *Binder v. Benson,* 225 Md. 456, 461, 171 A.2d 248 (1961). He is presumed to know and agree to its contents. *See Holzman v. Fiola Blum, Inc.,* 125 Md.App. 602, 629, 726 A.2d 818 (1999). A settlement agreement requiring the parties to execute mutual releases of "any and all claims" relating to a specified subject matter is a specifically enforceable contract.

[W]hen the scope of [a release] agreement is stated in clear and unambiguous language, the words utilized to express this breadth should be given their ordinary meaning as there is no room for interpretation.... [S]ettlement agreements, as all other contracts ..., are subject to interpretation in light of the settled and oft-repeated principles of

objective construction. The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract. . . . Where a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed.

*Bernstein v. Kapneck,* 290 Md. 452, 459, 430 A.2d 602 (1981) (internal quotations and citations omitted). In the absence of fraud, accident, or mutual mistake, there are no grounds to vary, alter, or contradict a complete and unambiguous release agreement. *See Kramer v. Emche,* 64 Md.App. 27, 42, 494 A.2d 225, *cert. denied,* 304 Md. 297, 498 A.2d 1184 (1985).

In this case, it is undisputed that there was neither fraud, accident, mistake, or ambiguity. Golub signed the Settlement Agreement because his financial problems were so severe that he "would have signed anything" that would "buy time" to pay his debts. The Settlement Agreement gave him more time by reducing and deferring his obligations to Cohen. In exchange, Golub agreed to release Cohen from all claims relating to Square 372. Golub's admissions show, as a matter of law, that Golub knew or should have known that if he had any rights to demand an accounting regarding the GSA Settlement, he waived them when he agreed to "sign a mutual release in which [Cohen and Golub] will release each other from any and all claims relating to Square 372." He knew or should have known that a claim for an accounting relating to the GSA Settlement on Square 372 was a "claim relating to Square 372."

We are not persuaded by Golub's complaint that Cohen may have kept all of the GSA Settlement proceeds. The record shows that a desire to resolve any claims that Golub might have had with respect to those proceeds may have been one of Cohen's reasons for settling with Golub on terms that took into account Golub's untenable financial situation at the time. Cohen was seeking to recover from Golub more than $1 million for what Cohen claimed was Golub's share of the

jointly incurred expenses of the GSA proposal and protest. By Golub's own admission, he had no money to pay any of his debt to Cohen. By compromising his expense reimbursement claim via the Settlement Agreement, Cohen apparently sought to ensure that Golub would not contest Cohen's rights to the GSA Settlement proceeds.

In any event, regardless of Cohen's reasons for entering into the Settlement Agreement, Golub cannot dispute that it was Cohen's right to ask for a release of all claims relating to Square 372, and Golub's right to accept or refuse. Having admittedly consented to the release, with full knowledge that he lacked knowledge of the terms of the GSA Settlement, and that Cohen refused to provide him with any information, Golub has no cause to complain about his agreement to release Cohen. He is bound by it. We shall affirm the judgment on the complaint for specific performance of the Settlement Agreement.

## II.

### Denial Of Discovery On Golub's Counterclaim For An Accounting

Golub argues that the trial court erred by requiring him to prove that he was entitled to an accounting before allowing him to obtain any discovery. Relying on the California Supreme Court's decision in *Hauk v. Superior Court of Los Angeles County,* 61 Cal.2d 295, 38 Cal.Rptr. 345, 391 P.2d 825 (1964), he complains that the trial court effectively "put the cart before the horse" when it required him to prove his standing without affording him any opportunity for discovery of information necessary to make that showing. We disagree.

Although there are no reported Maryland decisions on this question, we conclude that the trial court followed a sound and widely recognized rule favoring such bifurcation of equitable accounting claims. The rule has been summarized as follows:

A suit for accounting is generally tried in two stages; the first stage concerns whether there is any right to an accounting, and only if it is determined that there is such a right does the proceeding move on to the second stage, which comprises the actual accounting.... Under the bifurcated process, the determination of whether a party has a right to an accounting is made by the court, and the burden of proof is on the party seeking the remedy, who must establish, by a preponderance of the evidence, that he or she has the right to an accounting.... *Discovery as to an accounting must be deferred until the preliminary issue of the right to an accounting is settled.*

1 Am.Jur.2d *Accounts and Accounting* § 66 (emphasis added). "[W]ithout the rule, any person could inspect the private records of another by the simple device of filing a complaint against the latter asking for an accounting." *Wood v. Brackett*, 266 So.2d 398, 399 (Fla.App.1972) (quashing order compelling discovery responses because trial court failed to make preliminary determination that plaintiff had right to accounting).

Deferral of discovery in claims for an accounting is well-established in other jurisdictions. *See, e.g., Ex parte Cunningham*, 270 Ala. 300, 118 So.2d 757, 758 (1960) ("orderly procedure requires that a determination first be made as to whether a *right* to an accounting exists; and ... if ... petitioners are entitled to such relief, they 'will be given full benefit of securing discovery of all such legal evidence as will assist in such accounting' "); *Cohoon v. Cohoon*, 627 S.W.2d 304, 306 (Mo.App.1981) ("A suit for an accounting must be tried in two stages. The first stage is to determine whether there is any right to an accounting. Only if the trial court determines that there is a right to an accounting does the trial proceed to the second stage which is the actual accounting"); *Stockmen's Ins. Agency v. Guarantee Reserve Life Ins. Co.*, 217 N.W.2d 455, 459–60 (N.D.), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 108 (1974)("The right to an accounting in all cases is a preliminary question which must be answered in the affirmative before the actual accounting is ordered");

*Advertising & Policy Comm. of the Avis Rent A Car Sys. v. Avis Rent A Car Sys.,* 780 S.W.2d 391, 400 (Tex.App.1989) ("In a suit for an accounting, the general rule requires that the right to an accounting must first be determined and, if found, reference for an account should be ordered").

The Florida courts have addressed this issue most frequently. Recently its intermediate appellate court affirmed that "[i]tems possibly relevant to an accounting are not discoverable until the right to an accounting has first been established. Once that occurs, discovery many proceed to the actual accounting." *Collier Anesthesia, P.A. v. Worden,* 726 So.2d 342, 343 (Fla.App.1999) (citations omitted) (reviewing Florida case law).

Federal courts also apply the rule on a discretionary basis. *See, e.g., Molinaro v. Lafayette Radio Electronics,* 62 F.R.D. 464, 466 (E.D.Pa.1973) ("Case law indicates that a [c]ourt, in its discretion, may defer discovery on the issue of damages until the plaintiff has established the right to an accounting"). *See generally* 4 James W. Moore et al., *Moore's Federal Practice* § 26.104 (3d ed.1999) (protective order may prevent defined and serious injury, or danger of abuse); *id.* at § 26.122 ("court may issue an order prescribing the sequence of discovery").

We recognize that a more flexible rule may be necessary in cases involving multicount complaints. In *KSQHG, Inc. v. Geiserman,* 682 So.2d 1190 (Fla.App.1996), *appeal dismissed by* 695 So.2d 700 (1997), the Florida Court of Appeals offered cogent reasons for such flexibility.

> After the merger of law and equity courts, accounting actions began to travel in multicount complaints with actions at law. [Florida's seminal case of] *Charles Sales Corp.* [*v. Rovenger,* 88 So.2d 551 (Fla.1956) ], involved only an equitable claim for an accounting arising out of an employment relationship; there were no counts seeking remedies at law. Cases following *Charles Sales Corp.* have recognized the necessity of examining both the discovery sought and the underlying action before applying the rule limiting discovery in accounting actions. [This court has] noted in dicta that a

party's request for an "accounting should not limit his right to discovery on the issues presented by his other claims for relief." ... Generally in cases involving equitable and law claims, application of the rule limiting discovery has turned on a finding that the case was "essentially" or "primarily" one for an accounting. Flexibility in this area should be encouraged. Bifurcation of multicount lawsuits can be complicated, especially where there has been a jury demand and the same fact issue pervades the legal and equitable causes of action.

*Id.* at 1191 (citations omitted). Because Golub's counterclaim consisted of a sole claim for equitable accounting, however, we have no concern that the deferral of discovery imposed undue limitations on him.

 Given the undisputed evidence that Golub voluntarily agreed to release Cohen from "any and all claims relating to Square 372," including claims for an accounting, we agree with the trial court that he should not be permitted to use discovery as a "back door" to obtain the accounting he waived. *See, e.g., Cohoon,* 627 S.W.2d at 306 (waiver of right to accounting by private settlement of partnership affairs). As this case illustrates, when "the financial records of [a defendant] could only have relevance as to the amount of any sums that might be due the plaintiffs in an accounting and not the issue of plaintiffs' right to an accounting," the trial court should not permit the discovery "until the issues of the right to an accounting has been determined favorably to plaintiffs." *Giammaresi v. Parker,* 326 So.2d 243, 245 (Fla.App.1976).

We do not find the California court's rationale in *Hauk,* 38 Cal.Rptr. 345, 391 P.2d 825, relied on by Golub, to be persuasive. In *Hauk,* the plaintiff sued the defendant for an accounting of profits allegedly made as result of their joint promotion of an industrial park. At his deposition, the defendant refused to answer certain questions about the profits. In turn, the trial court refused to order complete responses on the grounds that it had discretion to require plaintiff to first establish his right to. an accounting before requiring the

defendants to provide that information. *See Hauk*, 38 Cal. Rptr. 345, 391 P.2d at 826. The Supreme Court reversed, holding that the trial court could not exercise such discretion without making a finding "that the defendants will be prejudiced ... if they should be required to answer...." *Id.*, 38 Cal.Rptr. 345, 391 P.2d at 827. The court explained that the new "liberal discovery" rules shifted the burden of proof to the party opposing discovery. *See id.* Thus, absent a showing that there was "good cause" for denying the discovery, the trial court abused its discretion by refusing to compel it.

■■■ We do not agree with the *Hauk* court's burden-shifting rationale, because it ignores the unique nature of an equitable accounting claim. Because the relief sought in an accounting claim is access to information, discovery is the remedy given to plaintiffs who prove they are entitled to an accounting. *See, e.g., Mervis v. Duke*, 175 Md. 300, 306, 2 A.2d 11 (1938) ("the appellant is entitled to an accounting if it appears that there are profits in which he has a joint interest, for which appellees refuse to account, that the account books, records and documents which afford the only evidence of the amount of such profits are in the possession of the appellees, who refuse to permit the appellant to inspect them, and that discovery is essential to enable him to secure adequate relief"). The prejudice that imposing preliminary discovery obligations imposes on a defendant to a suit for an accounting is self-evident: a party should be not required to disclose information in order to protect its right not to disclose that very information.

Nor do we find Golub's generic claims of prejudice persuasive. On the record before us, we see no prejudice resulting from the denial of the requested discovery. The threshold issue that Golub had to address was the effect of the Settlement Agreement on his rights against Cohen. This was precisely the same issue he failed to adequately dispute in opposing Cohen's motion for summary judgment on the complaint. As the summary judgment proceedings should have illustrated, merely proving that he once had a right to an

accounting did not necessarily establish that he still had that right. To this day, Golub has not proffered any explanation, much less any evidence, for why his agreement to release "any and all claims relating to Square 372" did not constitute a release of any and all claims he may have had for an accounting relating to Square 372.

As a final matter, we wish to address the role of our decision in *Golub I*, both in the remanded proceedings and in this appeal. Preliminarily, we note that the remanded proceedings might have been abbreviated if Cohen had pursued summary judgment on the counterclaim. As we stated in our first opinion, we dismissed *Golub I* only because the counterclaim remained outstanding, and thus the appeal was not ripe. On remand, Cohen could have moved immediately for summary judgment on Golub's counterclaim, relying on the same evidence showing "waiver by Settlement Agreement" that he used to obtain summary judgment on his complaint. That might have required the court to resolve Golub's discovery demands before the July 6 motions hearing. Instead, Cohen used the Settlement Agreement solely as a defense to the accounting counterclaim and discovery requests. The trial court waited for Cohen to move for judgment, which he finally did at the July 18 trial.

We acknowledge that this Court's unfortunate dictum in *Golub I* that Cohen "should have provided [Golub] with the information he sought" inspired Golub to believe that we had rejected Cohen's argument that Golub waived his right to demand an accounting. Although Golub placed great emphasis on this comment in the remanded proceedings, we remind him that we did not reach any of the substantive issues raised in that appeal, and that the dictum was not binding. *See, e.g., State v. Wilson,* 106 Md.App. 24, 39, 664 A.2d 1 (1995), *rev'd on other grounds,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) ("*Obiter dicta,* if noticed at all, should be taken with a large grain of salt").

Moreover, Golub's interpretation of this comment does not merit reversal of the judgment. Contrary to Golub's conten-

tions, this non-binding dictum did not constitute "evidence" that he was entitled to an accounting; nor did it prejudice his efforts to prove that he was entitled to an accounting. During the July 6 motions hearing, the trial judge explicitly cautioned Golub's counsel that we had not ruled on the waiver issue, or on its impact on the counterclaim. She advised counsel that in order to prove that Golub was entitled to an accounting, he would have to prove more than that he should have received information at the time he demanded it; he would have to prove that he was still entitled to obtain such information *after he signed the Settlement Agreement.* Certainly, this warning echoed one of Cohen's constant refrains throughout the remanded proceedings. Thus, Golub knew he would have to prove that he had not waived his right to demand information by agreeing to release Cohen.

Nevertheless, at trial, Golub cited *Golub I* and "the statute" (*i.e.*, section 9–404) as the only "evidence" that he needed to establish his right to an accounting. The trial court correctly rejected such bootstrapping. Accordingly, we find no error in the trial court's entry of judgment on "lack of evidence" grounds.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**