79 A.3d 394

**Effie DOLAN**

v.

**Christopher McQUAIDE.**

**No. 1433, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Nov. 5, 2013.

Howard J. Needle, Baltimore, MD, for appellant.

Cameron A. Brown (Clara Campbell, on the brief) Elkton, MD, for appellee.

Panel: MATRICCIANI, BERGER, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Appellant, Effie Dolan, filed a complaint in the Circuit Court for Cecil County on November 17, 2008, naming as defendant the appellee, Christopher McQuaide, and bringing claims for replevin, conversion, breach of contract, accounting, breach of fiduciary duty by fraud, unjust enrichment, promissory estoppel, civil conspiracy, aiding and abetting, and intentional infliction of emotional distress.

The circuit court granted McQuaide's motion for summary judgment on all counts, and on February 10, 2011, this Court affirmed summary judgment except for four counts: breach of contract, accounting, unjust enrichment, and promissory estoppel.

On remand, McQuaide moved again for summary judgment on all remaining counts. The circuit court granted McQuaide's motion except as to unjust enrichment on February 6, 2012. Dolan moved to revise the judgment on March 15, 2012, but her motion was struck as untimely. McQuaide

filed a motion to alter or amend the judgment, which the court granted on August 31, 2012, thereby disposing of all claims. Appellant noted this timely appeal on September 20, 2012.

## QUESTIONS PRESENTED

Dolan presents three questions for our consideration, which we have edited to comport with our discussion: [1]

I. Did the trial court err when it granted McQuaide's motion for summary judgment on breach of oral contract and promissory estoppel, where there was no evidence that the parties had discussed and agreed upon the scope of the plaintiff's services?

II. Did the trial court err when it granted McQuaide's motion for summary judgment on unjust enrichment and accounting, where there was record evidence of the fair market value of her services?

III. Did the trial court err when it struck Dolan's motion to revise the judgment, which was not filed timely due to her counsel's mistake?

For the reasons that follow, we answer no to question one, we answer yes to question two, and we do not reach the merits of question three. We therefore remand the case to the Circuit Court for Cecil County for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Dolan and McQuaide began a personal and romantic relationship in 1997, and they were engaged to be married in 2002. Sometime between 2000 and 2002, the parties decided to open a carwash business. According to the complaint, "In consideration [for Dolan's] efforts to do the planning, financial and otherwise, for Diamond Car Wash, [McQuaide] agreed and contracted that he and the Plaintiff would be equal partners in the venture, and would share the net profits therefrom equally."

---

1. Dolan's brief combines questions one and two and asks "[w]hether the lower court erred in granting summary judgment as to the counts of breach of contract, unjust enrichment, promissory estoppel, and an accounting?"

Between 2002 and 2005, Dolan provided various services to McQuaide and his nascent business, "Diamond Car Wash." Among other things, Dolan drafted a business plan and financial projections, wrote contracts for McQuaide to use with his architect, general contractor, and investors, and created a logo and website for the business.

The parties' personal and professional relationship ended just before Diamond Carwash opened, in October of 2005. According to Dolan's complaint, McQuaide did not compensate her as promised, and he refused to allow her to inspect the business's records. Dolan therefore brought claims against McQuaide, including for breach of contract, promissory estoppel, accounting, and unjust enrichment.[2]

After an appeal and remand, noted above, the trial court granted summary judgment in favor of McQuaide on all counts except unjust enrichment. The date stamp on that judgment reads "12 Feb–6 PM 1:05." Dolan's counsel apparently believed that "12" indicated the day, rather than the year, of the judgment, and so did not file a motion to revise judgment until March 15, 2012.[3] The circuit court struck Dolan's motion as untimely and granted McQuaide's motion to alter or amend, thereby granting summary judgment in his favor on all counts. Dolan filed a timely notice of appeal from this judgment, bringing the case before us.

## DISCUSSION

### Standard of Review

All claims in the present case were disposed of by summary judgment, which we review according to the following rubric:

---

**2.** Dolan's complaint included other counts stemming from her allegations that when the parties separated, McQuaide retained her personal property and caused the police to harass her.

**3.** Maryland Rule 2–535(a) provides thirty days to file a motion to revise, and Rule 1–203(c) allows three additional days when service of process is by mail. Had the judgment actually been filed on February 12, 2012, Dolan would have had until March 16, 2012, to file her motion.

A trial court's grant of a summary judgment motion is proper if "there is no genuine dispute as to any material fact and ... the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). Maryland courts hold that a "material fact is a fact the resolution of which will somehow affect the outcome of the case." *Arroyo v. Bd. of Educ.*, 381 Md. 646, 654, 851 A.2d 576, 581 (2004) (citations omitted).

Once the moving party provides the trial court with a *prima facie* basis in support of the motion for summary judgment, the non-moving party is obliged to produce sufficient facts admissible in evidence, if it can, demonstrating that a genuine dispute as to a material fact or facts exists. These tendered facts should be given under oath, based on the personal knowledge of an affiant. *Id.* at 655, 851 A.2d at 581. "Bald, unsupported statements or conclusions of law are insufficient." *Id.* (citations omitted).

If no genuine dispute of material fact is found to exist, a court then considers whether the movant is entitled to judgment as a matter of law. *See* Md. Rule 2–501. On appellate review of the grant of summary judgment, we review the trial court's conclusions of law *de novo*. *Messing v. Bank of America, N.A.*, 373 Md. 672, 683–84, 821 A.2d 22, 28 (2003). As we consider the trial court's conclusions of law, "we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Jurgensen v. New Phoenix Atl. Condo. Council of Unit Owners*, 380 Md. 106, 114, 843 A.2d 865, 869 (2004).

*Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 162, 857 A.2d 1095 (2004).

## I.

 Dolan first argues that the trial court erred when it granted summary judgment on her claims for breach of oral contract and promissory estoppel. A claim for breach of contract cannot stand if its essential terms are vague or uncertain:

> ... The parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties. Such a contract cannot be enforced in equity nor sued upon in law. For a contract to be legally enforceable, its language must not only be sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do, but also must be sufficiently clear and definite in order that the courts, which may be required to enforce it, may be able to know the purpose and intention of the parties.

*Robinson v. Gardiner,* 196 Md. 213, 217, 76 A.2d 354 (1950) (internal citations omitted), cited in *Mogavero v. Silverstein,* 142 Md.App. 259, 272, 790 A.2d 43 (2002). Similarly, a claim for promissory estoppel requires "a clear and definite promise." *Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.,* 342 Md. 143, 166, 674 A.2d 521 (1996).

Appellant points to four documents that generate a genuine factual dispute over her alleged agreement with appellant: her complaint, her interrogatory answers, and her testimony in two affidavits. First, as quoted above, appellant's complaint alleges that, "[i]n consideration [for Dolan's] efforts to do the planning, financial and otherwise, for Diamond Car Wash, [McQuaide] agreed and contracted that he and [Dolan] would be equal partners in the venture, and would share the net profits therefrom equally." Second, one of Dolan's interrogatory answers states, as follows:

> Though [Dolan]'s and [McQuaide]'s contractual relationship was oral, it was clearly an agreement that was thoroughly enforced, there was an offer and acceptance, it was extended and strengthened during the course of conduct between the parties, during an almost seven-year period, and clearly evident through the credibility of the parties. [McQuaide] on numerous and countless occasions throughout the years of 2002–2005 engaged, acted, and interacted

with [Dolan] as a professional and business partner in the Diamond Car Wash endeavor. There was a meeting of the minds between the parties through offer and acceptance. The partnership entailed [Dolan] providing much subject matter expertise and intellectual capital, business know-how for the planning, financing, and start up of Diamond Car Wash. [McQuaide] clearly conveyed to [Dolan] that she would profit and benefit as a partner from Diamond's future success, in consideration for her work effort. Specifically, [McQuaide] stated and implied on numerous occasions that [Dolan] would leave her job at GMACM to run the car wash operations, and that [McQuaide]'s brother knew and was well aware this would happen.

Third, Dolan swore to the following facts in a 2009 affidavit: In 2002, [McQuaide and I] entered into an oral contract to begin plans for building and operating a carwash. During the time period between 2002 and 2005, I developed a business plan for the car wash and wrote contracts for [McQuaide] to use with the architect, general contractor, and investors. I also created a logo and website for the carwash at [McQuaide]'s request. We agreed to share the profits from the carwash equally.

And fourth, Dolan swore in a 2012 affidavit that she and McQuaide had "entered into an oral contract to begin plans for building and operating a car wash," and that "[a] clearly understood contract existed between the parties, which became very evident by our conduct and in our course of dealing during our almost seven year relationship, prior to our falling out in 2005."

██ None of these evidentiary statements, however, permit the inferences that Dolan's claims require. Although it is often left unstated as an obvious element, an oral contract requires an oral communication. *See, e.g., Osborn v. Boatmen's Nat. Bank of St. Louis,* 811 S.W.2d 431, 434 (Mo.Ct. App.1991) (oral contract requires "recent, definite conversations"). But once we remove from Dolan's complaint and testimony her mere legal conclusions that "an agreement" or

"a contract" existed between the parties, we are left with two insufficient sets of factual allegations.

First, Dolan's statements establish that the parties spoke only in general terms about what she would do in exchange for a share in the business: "planning, financial and otherwise" and "providing much subject matter expertise and intellectual capital, business know-how for the planning, financing, and start up." But the promise to help "plan" opening of a business in three subject areas is no more definite than the words used in *Mogavero v. Silverstein,* 142 Md.App. 259, 790 A.2d 43, which were not sufficiently definite to form a contract. In that case, Mogavero brought suit for breach of an alleged oral contract providing "that Mr. Mogavero would help Silverstein 'with the construction end of the project.'" 142 Md.App. 259, 273, 790 A.2d 43 (2002). We held that "[t]his purported agreement is so vague that there is no way to tell if Silverstein breached it or if Mr. Mogavero breached the contract when he refused to help appellees with the project even though construction had not even commenced." *Id.* Similarly, the alleged oral promises in this case would leave the court unable to determine whether Dolan had satisfied her obligations. If we are to bind the parties in contract, the express terms must be as definite as a reasonable conversation between parties who fully intend to carry out a major undertaking, like starting the business in this case. Here, the only alleged promise was to help in "planning," without further detail, and as in *Mogavero,* the parties cannot be bound by such vague terms as a matter of law.

■ Second, while Dolan's evidence does show that she *performed* specific services, she did so without having discussed them in detail at the time that the alleged oral contract was formed. Conduct can serve as the basis for contract implied in law or fact, both of which we discuss, below. *See generally Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs,* 155 Md.App. 415, 843 A.2d 252 (2004). But conduct *cannot* form an *oral* contract, and it cannot bind a

counter-party in promissory estoppel where there has been no definite promise to perform the alleged conduct.

For these reasons, there was no evidence from which a fact-finder could infer a definite set of promises that gave rise to an oral contract between the parties, or that estops McQuaide from avoiding his alleged obligations. The trial court, therefore, did not err when it entered summary judgment in favor of McQuaide on Dolan's claims for breach of oral contract and promissory estoppel.

## II.

Dolan next argues that the trial court erred when it entered summary judgment in favor of McQuaide on her claim of unjust enrichment, holding that she failed to produce sufficient evidence to generate a dispute of fact as to damages. Because the intersection of contract and restitution is an area of the law fraught with confusion, we begin by mapping out the various terms involved in the pleadings and in our discussion: "oral contract," "written contract," "express contract," "contract implied-in-fact," "contract implied-in-law," "quasi-contract," "unjust enrichment," and *"quantum meruit."* Judge Moylan plotted the history of these terms in great detail while writing for our Court in *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs,* 155 Md.App. 415, 843 A.2d 252 (2004). We shall not repeat the great effort that Judge Moylan went through to chart this territory, and instead we describe only the present dividing lines.

First, we must purge our nomenclature. For reasons explained below, "oral contracts" and "written contracts" are both considered "express contracts." *See Alternatives Unlimited,* 155 Md.App. at 470–71, 843 A.2d 252; 1 *Corbin on Contracts* § 18 (1963).[4] Second, the terms "contract implied

---

4. *See also, e.g., People's Bank & Trust Co. v. United States,* 11 Cl.Ct. 554, 566 (1987); *Thomas v. Lomax,* 82 Ga.App. 592, 61 S.E.2d 790, 791 (1950); *Century 21 Castles by King, Ltd. v. First Nat'l Bank of Western Springs,* 170 Ill.App.3d 544, 121 Ill.Dec. 174, 177, 524 N.E.2d 1222, 1225 (1988); *Woodall v. Citizens Banking Co.,* 507 N.E.2d 999, 1001

in law," "quasi-contract," and "unjust enrichment" all describe the same substantive claim, which we shall call "unjust enrichment" and that has three elements:

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 295, 936 A.2d 343 (2007).

With these terms consolidated, our next task is to discern between an express contract, a contract implied-in-fact, and a claim for unjust enrichment. These causes of action can be classified according to two features. The first is verbal communication: an express contract requires some verbal communication, while claims for contract implied-in-fact and for unjust enrichment can rest on actions alone. *See* 1 *Williston on Contracts* § 1:5 (4th ed. 2002) ("[A]n implied-in-fact contract arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words."); *see also Davies v. Olson,* 746 P.2d 264, 269 (Utah Ct.App.1987) ("A contract implied in fact is a 'contract' established by conduct."). The second feature distinguishing these claims is the communication of *definite terms:* a contract—be it express or implied-in-fact—requires definite terms, while a claim for unjust enrichment does not. *Compare Hill v. Cross Country Settlements,* 402 Md. at 295, 936 A.2d 343 (reciting the elements of unjust enrichment), *with Robinson,* 196 Md. at 217, 76 A.2d 354 ("no action will lie upon a contract, whether written or verbal, where such a contract is vague or uncertain in its essential terms"). *See also* Restatement 2d of Contracts § 19 cmt. a (1981) ("Words are not the only medium of

(Ind.Ct.App.1987); *J. Koury Steel Erectors, Inc. v. San–Vel Concrete Corp.,* 120 R.I. 360, 387 A.2d 694, 697 (1978).

expression. Conduct may often convey as clearly as words a promise or an assent to a proposed promise.").

This taxonomy can be summed up, as follows: 1) an express contract arises from *verbal* communication of *definite terms;* 2) a contract implied-in-fact arises from *actions* implying *definite terms;* and 3) unjust enrichment arises from *actions* that do *not* imply *definite terms.*[5] In the present case, there was no express agreement to perform the business services that Dolan eventually rendered. And, as discussed above, "planning" to open a carwash business is not the sort of undertaking whose scope is reasonably well-defined; whatever actions Dolan took to "plan" the business did not signal a *definite promise* on her part that could bind McQuaide to a contract implied-in-fact.[6]

Without evidence of express or implied communication of definite terms, Dolan's only viable claim lies in unjust enrichment, which brings into play the last term on our list, *"quantum meruit."* Unlike the other terms in our list, *quantum meruit* is not truly a cause of action but a *measure of*

---

5. To illustrate these differences, imagine that a homeowner's lawn and garden are in disrepair, and his neighbor is a landscape architect. The homeowner and his neighbor could state—orally or in writing—that the neighbor will cut the homeowner's lawn in return for $25, laying the foundation for an oral or written contract to perform definite terms. Later, if the neighbor notices that the yard has again fallen into disrepair and undertakes to cut it, and if the homeowner manifests his assent with, *e.g.*, a friendly wave, then the parties' non-verbal actions could form a contract implied-in-fact because their actions communicate agreement to the definite obligations they undertook in the past. If, on the other hand, the neighbor sets about performing a full suite of landscape architecture services, then even a friendly wave in acknowledgment would not bind the homeowner to a contract implied-in-fact, because unlike the discrete task of mowing a lawn in return for a customary payment, landscape architecture is an amorphous service and there could be no manifest intent to the undiscussed scope of the neighbor's work. In that case, the neighbor may be able to recover the value of his services through a claim for unjust enrichment, but the indefinite nature of those services prevent the parties' conduct from forming a contract implied-in-fact.

6. Even if it were, Dolan did not plead that she and McQuaide had a contract implied-in-fact.

*recovery* available in an action for contract implied-in-fact or for unjust enrichment. *See Alternatives Unlimited,* 155 Md. App. at 482–83, 843 A.2d 252 (citing *Mogavero,* 142 Md.App. at 274–75, 790 A.2d 43). The term itself is shorthand for the "value" of the plaintiff's services.[7] *Alternatives Unlimited,* 155 Md.App. at 482, 843 A.2d 252. But just as beauty is in the eye of the beholder, *"quantum meruit"* can take on more than one value-even on the same set of facts.[8] Thus, in an action for contract implied-in-fact, *quantum meruit* is the customary or market price of the plaintiff's services, whereas in an unjust enrichment claim, *quantum meruit* is the actual value realized by the defendant. *Alternatives Unlimited,* 155 Md.App. at 482–87, 843 A.2d 252 (citations omitted).

The justification for this policy is straightforward. Actions creating a contract implied-in-fact signal the defendant's agreement to pay a customary price for definite services. As such, the defendant has knowingly assumed the risk that the services' actual value will be less than that price, and in return the defendant can reap a reward[9] if the services' realized value exceeds that price.[10] In an action for unjust enrichment, however, there has been no agreement, the defendant has no prior expectations either as to value or as to risk, and so the law of restitution simply returns the defendant to the *status quo* by disgorging the value of the benefit actually

---

7. Its counterpart, *quantum valebat,* expresses the value of delivered goods. *See Alternatives Unlimited,* 155 Md.App. at 472, 843 A.2d 252 (citing 1 George E. Palmer, *The Law of Restitution,* p. 7 (1978)).

8. *See* 26 *Williston on Contracts* § 68:35 ("[T]he necessity of putting a dollar value on the plaintiff's performance as a basis for judgment in its favor introduces [a] further problem[ ] ... whether the proper measure of damages is the market value or cost to the plaintiff of what it has rendered or whether it is the benefit that the defendant has received." (footnote omitted)).

9. This is known to economists as the "consumer surplus."

10. On the other side of the transaction, the plaintiff has assumed the risk of cost overruns, and the potential profit—the producer surplus—if costs are less than expected.

received.[11] In that way, the plaintiff shoulders all of the risk in the transaction,[12] while the defendant takes on no risk and is left no better or worse off than they were, *ex ante* (save the costs of litigation).

▮ Returning to the present case, the trial court held that evidence of the fair market value of Dolan's services could not establish the actual value to McQuaide. Consequently, the trial court held that Dolan had not generated a dispute of material fact over whether she provided a benefit to McQuaide for which she could recover *quantum meruit.* But this holding ignores the fact that the two values can coincide, as Judge Moylan observed in *Alternatives Unlimited:*

The reasonable value of the work or services performed by the plaintiff is clearly an apt measure of the plaintiff's damages when the claim is based on an implied-in-fact contract. In such a case, the utility of *quantum meruit* is self-evident. Less evident is the occasional utility of *quantum meruit* in a case based on [unjust enrichment]. Sometimes when the unjust enrichment of the defendant cannot otherwise be measured, the reasonable value of the services received, but not paid for, is the measure of the unjust gain. In the context of quasi-contract, however, the reasonable value of the services is viewed through the prism of the defendant's gain or enrichment rather than through the prism of the plaintiff's loss. The dollar amount may be the same, but the theory of recovery is different.

---

**11.** *See, however,* Restatement 1st of Restitution § 1 cmt. e (1937) ("[I]f the transferee was guilty of no fault, the amount of recovery is usually limited to the amount by which he has been benefited.... On the other hand, a person who has been unjustly deprived of his property or its value or the value of his labor may be entitled to maintain an action for restitution against another although the other has not in fact been enriched thereby.").

**12.** The costs required to provide services are borne by the plaintiff regardless of whether recovery is in contract or unjust enrichment. Thus, the only difference relevant to the plaintiff is whether he or she will recover more or less than the express or implied contract price would have yielded.

155 Md.App. at 486–87, 843 A.2d 252 (citing Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*, 35 Amer. U.L.Rev. 547, 557 (1986) ("[T]he reasonable market value of plaintiff's services can be viewed as the correct remedy . . . even in many cases in unjust enrichment because reasonable value can be viewed as the defendant's gain in certain situations.")).

Fair market value and actual value are not mutually exclusive, and a fact-finder can use the former as evidence of the latter. As such, evidence of the fair market value for Dolan's services established a genuine dispute of fact about the benefit to McQuaide, and that evidence should have moved the case beyond the summary judgment stage. *See, e.g., Loyal Erectors, Inc. v. Hamilton & Son, Inc.,* 312 A.2d 748, 756 (Me. 1973) ("[A]s a condition precedent to his right to recover [for unjust enrichment], the contractor must make out a *prima facie* case that the fair market value of his defective product shows that the result of his labor was of some value to the other party."). *See also* 26 *Williston on Contracts* § 68:38 ("To make out a case for recovery for such work and materials so furnished, [a contractor] must prove how much the result of his work had benefited the defendant; he must prove what the fair market value of the thing produced by his misdirected work is; and until he has done that he has not made out even a *prima facie* case on which he is entitled to recover anything." (quoting *Gillis v. Cobe,* 177 Mass. 584, 59 N.E. 455 (1901))). We therefore conclude that the trial court erred when it entered summary judgment in favor of McQuaide on Dolan's claims sounding in unjust enrichment.[13]

---

**13.** On remand, the trial court will have to determine whether the circumstances of Dolan's unjust enrichment claim warrants an accounting. The general rule is that a suit in equity for an accounting may be maintained when the remedies at law are inadequate. *Alternatives Unlimited,* 155 Md.App. at 508, 843 A.2d 252 (citations omitted). Determining the realized value of Dolan's *quantum meruit* claim may require an accounting to resolve "great complication, or difficulties in the way of adequate remedy at law." *Id.* at 508–09, 843 A.2d 252 (quoting *Nagel v. Todd,* 185 Md. 512, 517, 45 A.2d 326 (1946)). *See also* 1 Am.Jur.2d *Accounts and Accounting* § 66 ("A suit for accounting

### III.

Finally, Dolan concedes that her motion to revise the judgment was untimely, but she argues that the trial court should not have granted McQuaide's motion to strike it due to what she calls an "understandable mistake." We need not resolve this issue on the merits, however, because while Dolan rests her argument on McQuaide's failure to show prejudice from her untimely *motion,* Dolan herself has failed to show any prejudice resulting from the trial court's *ruling.* Having examined the motions and arguments made at trial, we see no novel arguments in Dolan's motion to revise that would have affected the outcome at trial, nor has Dolan pointed us to any. We therefore have no grounds to reverse the trial court's decision to strike Dolan's motion. *See Barksdale v. Wilkowsky,* 419 Md. 649, 660 (2011) (absent limited circumstances indicating "egregious" error, the burden is on the appealing party to show that an error caused prejudice).

Assuming—without deciding—that the motion to strike prejudiced Dolan in some manner, we would not hold that counsel's mistake excused compliance with the Maryland Rules. *See First Wholesale Cleaners Inc. v. Donegal Mut. Ins. Co.,* 143 Md.App. 24, 41, 792 A.2d 325 (2002) (citations omitted) ("The decision whether to grant a motion to strike is within the sound discretion of the trial court."). First, Dolan presents no authority for her fundamental claim that an "understandable mistake" and "unique circumstances" allow the trial court to depart from the Maryland Rules of Procedure. To the contrary, we have held that once the time for a motion to revise passes, a judgment becomes enrolled and "a court has no authority to revise that judgment unless it determines, in response to a motion under Rule 2–535(b), that the judgment was entered as a result of fraud, mistake, or

---

is generally tried in two stages; the first stage concerns whether there is any right to an accounting, and only if it is determined that there is such a right does the proceeding move on to the second stage, which comprises the actual accounting."), *cited in Golub ex rel. Golub v. Cohen,* 138 Md.App. 508, 520, 772 A.2d 880 (2001).

42

irregularity." *Thacker v. Hale*, 146 Md.App. 203, 216–17, 806 A.2d 751 (2002) (citing *Tandra S. v. Tyrone W.*, 336 Md. 303, 314, 648 A.2d 439 (1994)).

Second, assuming the trial court had some latitude under the Rules, counsel's conflation of "6" and "12" as year and day was not an "understandable mistake." Although the number "12" could conceivably represent either a day or a year, the number "6" appeared on the judgment's timestamp a mere five characters away from the "12," and that "6" could not have stood for the year 2006. We would expect a reasonably prudent attorney not to misinterpret writing that is unambiguous in its context.

Regardless of our opinion as to counsel's actions, Dolan has shown no prejudice stemming from the trial court's ruling on McQuaide's motion to strike. We therefore will not disturb the trial court's judgment on account of it.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 50% BY APPELLANT AND 50% BY APPELLEE.**